UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

AMADOU DIA,

        Petitioner,               Case No. 1:25-cv-1742

v.                                         Honorable Jane M. Beckering

ROBERT LYNCH et al.,

        Respondents.
_____/

## OPINION

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan, initiated this action by filing a counseled petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.) For the following reasons, the Court will deny Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.

## Discussion

**I.    Procedural History**

Petitioner initiated this action in the United States District Court for the Eastern District of Michigan on November 13, 2025. (Pet., ECF No. 1.) In Petitioner's § 2241 petition, Petitioner challenges the lawfulness of his current detention and asks the Court to, *inter alia*, accept jurisdiction over this action and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner or to conduct a bond hearing. (Pet., ECF No. 1, Page 10–11.)

On December 9, 2025, the Eastern District of Michigan transferred the action to this Court. (Order, ECF No. 3.) In an Order entered on December 15, 2025, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested

by Petitioner should not be granted. (Order, ECF No. 6.) Respondents filed their response on December 18, 2025, (ECF No. 7), and Petitioner filed his reply on December 23, 2025, (ECF No. 8).

## II.   Relevant Factual Background

Petitioner is a native and citizen of Senegal and "former resident of Gabon." (Pet., ECF No. 1, Page 1; Peng Decl. ¶ 4, ECF No. 7-1, Page 2.) "On March 2, 2006, [Petitioner] was admitted into the United States at New York, New York, as a nonimmigrant temporary visitor for business, with authorization to remain in the United States until June 2, 2006." (Peng Decl. ¶ 5, ECF No. 7-1, Page 3.) Petitioner "did not depart the United States before or after June 2, 2006." (*Id.* ¶ 6.)

Petitioner filed a Form I-589, Application for Asylum and Withholding of Removal, with the United States Citizenship and Immigration Services (USCIS) on March 2, 2007. (*Id.* ¶ 7.) "USCIS referred the I-589 to the Immigration Court and issued a Form I-862, Notice to Appear (NTA)" on April 30, 2007. (*Id.* ¶ 8.) "The NTA charged [Petitioner] with violating section 237(a)(1)(B) of the Immigration and Nationality Act (INA) in that he remained in the United States for longer than permitted." (*Id.*)

The Cleveland Immigration Court denied Petitioner's Form I-589 on April 1, 2009, and "ordered him removed to Senegal." (*Id.* ¶ 9.) Petitioner appealed to the Board of Immigration Appeals (BIA), and on March 22, 2011, "the BIA ordered [Petitioner] removed to Gabon and granted Withholding of Removal from Senegal." (*Id.* ¶ 11.) Petitioner then appealed to the United States Court of Appeals for the Sixth Circuit, and on December 13, 2011, the Sixth Circuit remanded the case to the BIA. (*Id.* ¶ 13.) The BIA then remanded the case to the Cleveland Immigration Court on June 12, 2012. (*Id.* ¶ 14, Page 4.) On November 7, 2012, the Cleveland Immigration Court "ordered [Petitioner] removed to Gabon and granted [Petitioner's] application

for Withholding of Removal to Senegal." (*Id.* ¶ 15.) Petitioner did not file an appeal regarding this decision. (*Id.*)

Since the November 7, 2012, decision, Petitioner "has reported to ICE yearly." (Pet., ECF No. 1, Page 1, 3.) On September 17, 2025, Petitioner reported for a "routine ICE check-in," and at that time, ICE arrested him. (*Id.*; Peng Decl. ¶ 16, ECF No. 7-1, Page 4.) On October 22, 2025, ICE "requested a travel document for [Petitioner] from the government of Gabon," and on October 28, 2025, "the government of Gabon declined to issue a travel document." (Peng Decl. ¶¶ 17–18, ECF No. 7-1, Page 4.) "On December 16, 2025, ICE . . . conducted a post-order custody review and issued [Petitioner] a Decision to Continue Detention," in which ICE advised Petitioner that it was "currently working with the Department of State to secure [Petitioner's] removal from the United States to a third country." (*Id.* ¶ 19.)

### III.   Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

### IV.   Merits Discussion

The parties agree that because Petitioner has a final order of removal, Petitioner's present detention is governed by 8 U.S.C. § 1231. (*See* Pet., ECF No. 1, Page 4; Resp., ECF No. 7, Page 3.) However, Petitioner contends that his detention is unlawful and violates the Due Process Clause of the Fifth Amendment. (Pet., ECF No. 1, Page 7–8.) In response, Respondents argue that

Petitioner's "continued detention under 8 U.S.C. § 1231(a) remains lawful and does not implicate the constitutional concerns identified in *Zadvydas v. Davis* 533 U.S. 678, 701 (2001)." (Resp., ECF No. 7, Page 3.)

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). Here, as noted above, Petitioner was taken into custody by ICE on September 17, 2025. The 90-day removal period, therefore, expired as of December 16, 2025.[1]

---

[1] In Petitioner's reply, he cites several non-binding cases that discuss that the six-month "presumptively reasonable" period may run throughout the removal period, even if the noncitizen was not detained during that period. (Reply, ECF No. 8, PageID.18.) In *Zavvar v. Scott*, one of the cases cited by Petitioner, the District of Maryland described the issue as follows, however, the District of Maryland did not conclusively resolve the issue in its opinion, noting that "there is, at a minimum, a reasonable argument that the six-month period runs continuously from the beginning of the removal period, even if the noncitizen is not detained throughout that period," but the District of Maryland ultimately resolved the petition based on Petitioner proving that his removal was not reasonably foreseeable, rather than based on the running of the six-month period:

> The question of whether the six-month period has expired is not clearly answered by *Zadvydas*. Where the *Zadvydas* Court referenced the 90-day statutory removal period in its discussion of the six-month period, it is clear that the six months includes the original 90-day period of detention, plus an additional 90 days. *See Zadvydas*, 533 U.S. at 701. *Zadvydas*, however, does not state whether the removal period, or the additional 90 days, counts toward the six months only when the noncitizen is actually detained. Though *Zadvydas* refers to this time period as a "period of detention," suggesting that only time in detention counts toward that period, *Zadvydas* contemplated only the situation in which a noncitizen was continuously detained from the issuance of the removal order while efforts to execute the removal were ongoing, *see id.* at 701, and did not directly address the situation presented here, where a noncitizen was not detained upon the issuance of the removal order, remained on release for over 17 years, and only then was subjected to post-removal order detention for the first time. This distinction is significant because *Zadvydas* appears to have sought to balance the length of time a noncitizen would be held in detention against the need to afford the Government some time immediately following the issuance of the removal order to make and execute arrangements for removal. *See id.* Because some if not most of those

In *Zadvydas v. Davis*, the Supreme Court held that after expiration of the 90-day removal period, the Government may continue to detain the noncitizen for a "presumptively reasonable period" of time, which the Supreme Court concluded equaled six months. *See Zadvydas*, 533 U.S. at 701. Following that six-month period, "once [a noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* [2]

---

arrangements, such as securing approval from a foreign country to remove an individual to that nation, can likely be pursued even while the noncitizen is on release, that balance may well differ in circumstances where, before the period of detention began, the Government had a period of time—indeed, in this case, over 17 years—to make the arrangements for removal. Thus, there is, at a minimum, a reasonable argument that the six-month period runs continuously from the beginning of the removal period, even if the noncitizen is not detained throughout that period. *See Tadros v. Noem*, No. 25-4108-EP, 2025 WL 1678501, at *3 (D.N.J. June 13, 2025) (finding that the removal period began upon the affirmance of the removal order even though the petitioner was immediately released, rather than when he was detained 16 years later, and rejecting the argument that the petitioner could not obtain habeas relief because he had not yet been in detention for six months); *Cordon-Salguero v. Noem*, No. 25-1626-GLR, Mot. Hr'g Tr. at 33–34 (D. Md. June 23, 2025) (Dkt. No. 21) (finding that the six-month period was not tolled upon release from detention); *Farez-Espinoza v. Chertoff*, 600 F. Supp. 2d 488, 500 (S.D.N.Y. 2009) (concluding that, where the Government was aware of a noncitizen's address but failed to pursue her removal until more than 15 months after the removal order was entered, "the removal period, as well as any presumptively reasonabl[e] six-month period of removal to which the Government may have been entitled" had expired six months after the entry of the removal order).

*Zavvar v. Scott*, No. CV 25-2104-TDC, 2025 WL 2592543, at *4 (D. Md. Sept. 8, 2025).

[2] The Court notes that the Supreme Court recently held that § 1231(a)(6) does not require the "Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022). The Court, however, did not reach Arteaga-Martinez's constitutional or *Zadvydas* claims, concluding that such claims were not properly before the Court. *See id.* at 583–84.

5

Here, because Petitioner is within the six-month presumptively reasonable period of detention as addressed by the Supreme Court in *Zadvydas*, based on the information presently before the Court, the Court will deny Petitioner's § 2241 petition without prejudice.[3]

## Conclusion

For the reasons discussed above, the Court will enter a Judgment denying Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.

Dated:   January 12, 2026              /s/ Jane M. Beckering
                                       Jane M. Beckering
                                       United States District Judge

---

[3] "Although the Supreme Court established a six-month period of presumptively reasonable detention," courts have found that *Zadvydas* does "not preclude a detainee from challenging the reasonableness of his detention before such time." *See, e.g.*, *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 395–96 (D.N.J. 2025) (citing *Zadvydas*, 533 U.S. at 699–701). That is, during the six-month period, "[t]he presumption of reasonableness is the default, but if a person 'can prove' that his removal is not reasonably foreseeable, then he can overcome that presumption," which means that "before the six-month period elapses, the government bears no burden to justify detention, and the petitioner must claim and *prove*[] that his removal is not reasonably foreseeable." *Id.* at 397 (citations omitted). Based on the information currently before the Court, the Court does not find that Petitioner has proven that his removal is not reasonably foreseeable.